Craig R. Brittain
8625 E. Sharon Dr.
Scottsdale, AZ, 85260
(602) 502-5612
craig@brittainforsenate.com
craigrbrittain@gmail.com

# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

CRAIG R. BRITTAIN, an individual and US Senate candidate in Arizona in the 2018 Federal Elections;

BRITTAIN FOR US SENATE, a Principal Campaign Committee, (And on behalf of all similarly affected users of Twitter).

    Plaintiff(s),

vs.

TWITTER, INC., a California corporation.

    Defendant.

No. CV-18-01714-PHX-DGC

**RESPONSIVE MEMORANDUM**

**MOTION TO COMPEL**

**REQUEST FOR HEARING**

**CERTIFICATION OF RULE 37 COMPLIANCE**

**PROPOSED ORDER**

## I. PROLOGUE: RESPONSIVE MEMORANDUM, REQUEST FOR HEARING, MOTION TO COMPEL, CERTIFICATION OF RULE 37 COMPLIANCE, PROPOSED ORDER

Plaintiff files this Responsive Memorandum, Motion to Compel, Request for Hearing, Certification of Rule 37 Compliance and Proposed Order, in regards to Defendant's Motion to Transfer and Declaration (*22, 23*).

## II. FACTS REGARDING DOCUMENT 22, MOTION TO TRANSFER

1. In *22, II. A* Defendant claims that Plaintiff "agreed to the terms" and also alleges that Plaintiff committed the first breach of contract. However, no evidence of a breach of contract by Plaintiff has been provided by the Defendant. In *22, IV. D* Defendant claims that "nothing in... [the Amended Complaint] suggests fraud". This is factually incorrect. The principal gravamen, or thrust of Plaintiff's Amended Complaint (*13*) is that the entirety of the contract is invalid and that the Defendant (1) has no jurisdiction, having stated in writing and verbal communication countless times that its service is "a public utility, like water or electricity (CEO Dick Costolo used this phrase regularly between 2008-2010 and CEO Jack Dorsey has used it regularly between 2011 and Present)", (2) wrote an invalid and unconscionable contract according to *In:re Zappos*, in order to avoid legally required arbitration which includes bargaining and mutual forum selection, the violation itself marked by the "terms may change any time without notice to you" phrasing of the contract, (3) has not conducted the required arbitration when the contract (Terms of Service) changes for over one billion users, including tens of millions of permanently suspended users who were likewise subject to a fundamental breach of contract by the Defendant, including Plaintiff, (4) has ignored the fact that Plaintiff filed Pro Se and In Forma Pauperis, which Courts have long held to be the standard for "gravely difficult" litigation. IFP status was granted by this Court, which means that the Court recognizes the "grave difficulty" of the financial situation of the Plaintiff, who additionally is self-represented and thus, in addition to being poor, is traveling primarily by bicycle and/or public transportation to file, upwards of 40 miles per trip (to and from his home in northern Scottsdale, Arizona), must also handle his own casework in spite of his lack of formal legal education and/or training. This Court has twice denied Plaintiff's request to file pleadings electronically.

## III. ARGUMENT

2. In *13*, Plaintiff makes the following claims which directly refute the claims made by Defendant in *22*. which the Defendant does not challenge.

3. In item #14 of *13*, Plaintiff claims that "Defendant admitted that it was a First Amendment protected public forum in at least one Court, and that the tweets of elected officials and candidates are also public forums." The Court in KFAC v. Trump (1:17-cv-05205) ruled these claims to be true. In accordance with this ruling, Defendant has no right to select jurisdiction when its contract does not apply to the forum in question. Public jurisdiction constitutes a textbook Federal Question, and when a Federal Question arises, it shall be answered in the Venue where the majority of the events occurred – in this case, in the District of Arizona, where *13* was filed in accordance with 28 U.S.C. § 1391(b)(2).

4. In #20 of *13*, Plaintiff sets out the grounds for the gravamen of the Breach of Contract complaint, the Third Cause of Relief as follows: "*Horton v. Horton, 254, Va. 111/115 (1997)* states that the party who commits a material breach of contract first is liable. Defendant committed the first breach(es). The provisions of the contract itself are unconscionable and/or illusory as Defendant retains the unilateral right to terminate "at any time for any or no reason". *In re: Zappos.com* (3:12-cv-00325) found similar contracts to be illusory. Any accusations of user liability are null/moot. Defendant is wholly liable for harm it has incurred against over 500 million users. Defendant is also wholly liable for specific harm against the Plaintiff, who is entitled to significant damages." The Defendant does not attempt to refute the claim which the Plaintiff has made and evidenced. Thus, the Court must rule that Twitter's "Terms of Service" contract in entirety, including the forum selection clause, is unenforceable and unconscionable.

Additionally, Plaintiff's claim that the contract itself is unconscionable does indeed contest the Defendant's claim of presumption of enforceability in whole. As *Zappos, supra* demonstrated, the presumption of enforceability relies upon the conscionability of the contract. In both documents *22* and *23*, Defendant admits that the contract, including the forum selection clause, changed without notice to Plaintiff, without the opportunity for bargaining or mandatory arbitration, and as a direct result of the whims of the Defendant to change their contract unilaterally "at any time for any or no reason", and even provides sworn testimony to this effect. Defendant incorrectly claims that fair bargaining happened while admitting that it did not. Not only does the Defendant fail to address the claim, Defendant has admitted to the violation in question by providing the *in flagrante delicto* inculpatory evidence in *23* directly to this Court. The sworn testimony states that the language of the contract, as well as the contract itself, have changed over time without arbitration. No evidence of even a semblance of an attempt to conduct arbitration or bargaining with Plaintiff has been provided by the Defendant, nor does an arbitration/bargaining provision exist within the contract (another sign of unconscionability from *Zappos, supra*). The differences between the contract provisions shown in #5 and #6, as well as Exhibits C and D of *23* are, by themselves, enough to constitute an unconscionable contract and a Breach of Contract by the Defendant. Likewise, the Court must treat this as a direct admission of a fundamental Breach of Contract by the Defendant. Since the year 2008, Twitter's contract has changed no less than twice annually, for no less than 22 total changes without any major arbitration or bargaining between parties regarding the contract. Indeed, if arbitration/bargaining were conducted in accordance with the law, it would be a massive headline on the front page of every news website in United States of America due to the public interest of tens of millions of suspended and/or censored users.

5. *Titan Indemnity Co. v. Hood*, 895 So. 2d 138 (Miss. 2004) sets forth the standards that must be met for Plaintiff to correctly resist Defendant's invocation of the forum-clause, "1. Its incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; 2. The selected forum is so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of its day in court; or 3. The enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914, 1916-1917, 32 L. Ed. 2d 513 (1972). Although Zapata is an admiralty case, its standard has been widely applied to forum selection clauses generally. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir.1988)." Plaintiff has shown via *Zappos, supra* that Defendant has unilateral "overweening" bargaining power, including over the forum-clause. The American Bar Association holds that proceeding Pro Se is "difficult, at best" (https://www.americanbar.org/content/dam/aba/administrative/delivery_legal_services/ls_del_wyominglawyerethicallyspeaking.pdf) and that adding In Forma Pauperis status to that should, in the mind of Court and reasonable reader, equate to "grave difficulty". Furthermore, the question posed in 3 is which forum would be more in the interest of the public. "Governments derive their just powers from the consent of the governed." (Arizona Constitution, Preamble) In this case, the public interest of over one billion total users, including tens of millions who have been censored, deverified or suspended by Twitter, illustrates that the public policy of the Venue of the District of Arizona is superior to that of the requested forum. Thus, Plaintiff meets all three requirements set forth in *Titan, supra,* even though the legal requisite only requires for one of the three criteria to be fulfilled in order to resist the forum-clause.

6. Federal Courts, according to *Zappos, supra,* have held that "if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract. See *Douglas v. Johnson Real Estate Investors, LLC,* 470 F.App'x 823, 825 (11th Cir. 2012).* ("Because the employee handbook allowed Johnson to unilaterally modify the arbitration procedures without notifying Douglas, the agreement to arbitrate was illusory and invalid."); *Morrison v. Amway Corp.,* 517 F.3d 248, 257-58 (finding arbitration agreement illusory and unenforceable where defendant held unilateral authority to amend or eliminate the arbitration program); *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Penn v. Ryan's Family Steak Houses, Inc.,* 269 F.3d 753, 759-61 (7th Cir. 2001) (denying motion to compel arbitration where agreement was illusory because one party had "sole, unilateral discretion to modify or amend"); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 315-316 (6th Cir. 2000) (arbitration agreement was "fatally indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures without any obligation to notify, much less receive consent from," other parties); *Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 939 (4th Cir. 1999) (holding that employer's ability to modify rules "in whole or in part" without notice to employee renders arbitration agreement illusory); *Grosvenor v. Qwest Corp.,* 854 F.Supp.2d 1021, 2012 U.S. Dist. LEXIS 23472, 2012 WL 602655 (D. Colo. 2012) ("Because Qwest reserved an unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and unenforceable.");

*Harris v. Blockbuster, Inc.*, 622 F.Supp.2d 396, 398-99 (N.D. Tex. 2009) (arbitration clause in internet video purchase agreement illusory because defendant reserved the right to alter the terms of the agreement at any time by giving notice to the consumer); *Snow v. BE & K Constr. Co.* 126 F.Supp.2d 5, 14-15 (D. Me. 2001) (holding arbitration agreement illusory and unenforceable because employer "reserve[d] the right to modify or discontinue [the arbitration] program at any time"); *Trumbull v. Century Mktg. Corp.*, 12 F.Supp.2d 683, 686 (N.D. Ohio 1998) (finding no binding arbitration agreement where "the plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced.")." This similar phrasing exists in Defendant's Terms of Service/arbitration contract as the ability to amend the Terms of Service "constantly", "at any time, for any or no reason", at Defendant's "sole discretion". To add irony, this phrasing itself has changed over 22 times in the scope of Defendant's continual, unilateral, non-mutual altering of its contracts to avoid arbitration. Defendant uses the phrase "constantly evolving", but in a legal context this means the Terms of Service are "constantly changing", which is far beyond the scope of a legitimate and enforceable contract, when the contract itself admits it is modified on a minute-by-minute basis. Thus, Defendant's arguments fall short of the established criteria, and they should be dismissed outright.

**IV. MOTION TO COMPEL**

7. Based on the evidence provided within these memoranda this Court should immediately compel the Defendant via the Proposed Order, which is attached. Plaintiff certifies good faith effort under Fed R. Civ P. 37.

## V. ADDITIONAL SUPPLEMENTAL MEMORANDUM REGARDING THE PROPOSED ORDER

8. Plaintiff has served all current documents multiple times to Defendant in compliance with this Court.

9. Defendant has not engaged Plaintiff in regards to the Mandatory Initial Discovery Pilot, nor provided any of the requested discovery documents to either the Plaintiff or the Court. Plaintiff has made multiple requests to the Defendant to arrange the Rule 26 Case Management Conference (meet-and-confer), without any effort by the Defendant to comply.

10. Defendant initially had different named counsel, Mr. Ryan Mrazik of Perkins Coie LLP, who signed the Waiver of Summons on Defendant's behalf, yet was not entered to appear.

11. Defendant is engaged in textbook dilatory conduct by signing a waiver allowing the summons to be served within this Venue/Jurisdiction and subsequently requesting that the Venue/Jurisdiction be changed. 22 is an attempt by the Defendant with an "improper motive... to delay an adverse judgment." *(San Bernardino Cmty. Hosp. v. Meeks, 187 Cal. App. 3D 457 (1986), quoting In re Marriage of Flaherty, 31 Cal.3d 637 (1982))*. The Defendant cannot meet the grounds for a Stay of Discovery, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *(U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.,673 F.3d 158, 162 (2d Cir. 2012) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987))*. Defendant has no claim to injury via the Venue/Jurisdiction and no regard for the Plaintiff's interest. Public interest clearly lies with the Plaintiff, who is one of tens of millions of affected users.

## VI. RULE 37 CERTIFICATION

12. Plaintiff certifies that multiple Good Faith attempts were made, swiftly, to comply with the MIDP and negotiate outside of the judiciary. Plaintiff communicated with Mr. Ryan Mrazik, counsel working on behalf of Defendant, over 6 times between 10/19/18 and 10/30/18. The nonresponsive nature of Defendant's counsel can be shown by the fact that multiple contact attempts were required for simple confirmation that Defendant had received document service, including the Amended Complaint, MIDP requests and requests to meet-and-confer. Defendant's counsel confirmed that they have received all emails including multiple requests to meet-and-confer, and have not done as much as to issue a simple reply regarding the Case Management Conference or other non-judicial solutions. Discussions were held in plain English which did not "[parrot] statutory language" but were attempts to "meaningfully discuss" the MIDP process (*Shuffle Master, Inc. v. Progressive Games, Inc. 170 F.R.D. 166 (D. Nev. 1996)*). In fact, Defendant initiated the process of communication by requesting a Waiver of the Summons (a non-judicial solution), prior to shifting position when discovery and conference were requested and becoming non-communicative. It can be evidenced that the Defendant's counsel received the communications and declined to further the conversation, and thus the correct decision given the immediacy of the MIDP timeline (Case Management Conference prior to 12/3/2018, MIDP hearing on 12/13/2018) and the Defendant's decision to attempt to change Venue/Jurisdiction in order to avoid the discovery process is for the Court to compel the Defendant's immediate participation. Defendant has now had access to the MIDP pleadings for several weeks. If the Defendant continues to refuse to comply with the Mandatory Initial Discovery Pilot, sanctions should be imposed under Fed R. Civ. P. 37.

## VII. REQUEST FOR HEARING

13. Plaintiff requests a hearing for Oral Argument with regards to the Proposed Order and Defendant's Motion to Transfer.

## VIII. PROPOSED ORDER

Upon a review and consideration of Plaintiff's Proposed Order regarding Jurisdiction, Venue and Enjoinment, it is, this ____ day of _____ 2018, hereby,

**ORDERED** that the Jurisdiction and Venue are this District of Arizona Court in the State of Arizona,

**ORDERED** that the Defendant immediately comply with the Mandatory Initial Discovery Pilot and provide all requested discovery documents to the Plaintiff,

**ORDERED** that, as the Court has found Defendant's contract "Terms of Service" unconscionable, Defendant is enjoined from modifying or enforcing the current contract, and must create a new contract which is conscionable, bilateral, and cognizable under all applicable laws,

**ORDERED** that Defendant shall immediately unsuspend, uncensor, and reverify any/all suspended, censored or verified accounts, and restore all tweets which they have deleted, other than tweets which have been deleted at the request of the users who created them,

**ORDERED** that Defendant shall refrain from any future suspensions, censorious actions, deverifications or deletion of user postings "tweets",

**ORDERED** that within 15 days of this action, Defendant shall provide full evidence of its compliance to this Court. If additional time is required to provide full evidence, partial evidence can be submitted and a request for additional time to comply can be heard by the Court.

1
2
3
4   DATED: November 5, 2018            *[signature]*
5                                      Craig R. Brittain
6                                      8625 E. Sharon Dr.
7                                      Scottsdale, AZ, 85260
8                                      (602) 502-5612
9                                      craig@brittainforsenate.com
10                                     craigrbrittain@gmail.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28