Craig R. Brittain
8625 E. Sharon Dr.
Scottsdale, AZ, 85260
(602) 502-5612
craig@brittainforsenate.com
craigrbrittain@gmail.com

# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

CRAIG R. BRITTAIN, an individual and US Senate candidate in Arizona in the 2018 Federal Elections;

BRITTAIN FOR US SENATE, a Principal Campaign Committee, (And on behalf of all similarly affected users of Twitter).

Plaintiff(s),

vs.

TWITTER, INC., a California corporation.

Defendant.

No. CV-18-01714-PHX-DGC

SUPPLEMENTAL MEMORANDUM

COUNTERCLAIM/RESPONSE IN REFERENCE TO DOCUMENT 28 REGARDING MOTION FOR PRELIMINARY INJUNCTION

WITHDRAWAL OF PRELIMINARY INJUNCTION

## I. PROLOGUE: SUPPLEMENTAL MEMORANDUM, COUNTERCLAIM/RESPONSE, WITHDRAWAL OF PRELIMINARY INJUNCTION

Plaintiff(s), Craig R. Brittain and Brittain for US Senate file the following counterclaim, supplemental memorandum and withdrawal of preliminary injunction for the reasons stated below.

## II. SUPPLEMENTAL MEMORANDUM/COUNTERCLAIM

1. Plaintiff hereby incorporates by reference document 27 in entirety, and adds the following facts and allegations to the register of the Court.

2. On June 7, 2018, the pending Complaint filed by Plaintiff was published by several international press outlets (Gizmodo and The Verge). These widely read articles were also shared on Twitter.

3. Defendant has omitted the fact that the request for a Waiver of the Summons was sent preemptively by Defendant via Ryan Mrazik to Plaintiff on Friday, October 5.

4. Forthcoming evidence is not the same as the absence of evidence. The lengthy MIDP request by the Plaintiff contains the information needed by the Plaintiff to prove his claims. Defendant has not denied that they are in possession of the evidence necessary for Plaintiff to prove his claims.

5. Defendant has engaged in speculation, circular reasoning and other inadmissible declarations with the motive of delaying due process (again). This Court should not consider the speculation of the Defendant to be merited argumentation.

6. Defendant's claim that Plaintiff has "offered no evidence" is flagrantly false. Rather, Defendant is arguing about the format of the evidence, but to claim that the evidence provided by the Plaintiff is not evidence because it does not meet the Defendant's preferred format is not only wrong, but frivolous. Defendant has not challenged the validity of the claims or citations provided by Plaintiff. Instead, the Defendant has chosen to "straw man" the Plaintiff in this Court, and improperly substitute the Plaintiff's own words and evidence with their own opinions.

7. Defendant's claim that the statements are "unsworn" is frivolous as well. All filings are signed under Fed R. Civ. P. 11.

8. With further regards to Fed R. Civ P. 11(b)(3), which entails the function of evidentiary support, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery". Thus, the potential of evidentiary support is considered equal to the direct presence of evidentiary support. In Plaintiff's Amended Complaint *13*, it is indicated by Plaintiff that full evidentiary support will require discovery, meaning that the Defendant's claims of the Plaintiff's filings being "unsworn" and "lacking evidence" are disproven by Fed R. Civ. P. 11. The underlying purpose of Defendant's claim is to distract from the fact that the evidence which will prove the full merits of Plaintiff's claims is within their possession, and to delay Plaintiff's receipt of the discovery evidence.

9. The Court should then rule that the evidence requests made by the Plaintiff are (1) valid (2) necessary and (3) supporting. *27* contains a Motion to Compel which is fully in accordance with the timeline of events between October 5 and Present, as well as the Court's MIDP schedule.

10. In ruling that the MIDP filing made by the Plaintiff specifies the necessary evidence, the remainder of Defendant's claim *(28)* should be seen as an improper, frivolous and inadequate response.

11. "Twitter is a public utility, like water or electricity." This is a verbatim quote originally spoken by previous Twitter CEO Dick Costolo circa 2008 and it has since been used by both ex-CEO Costolo and present CEO Jack Dorsey publicly, in writing, and in official communiques, including in Court, no less than 100 times in the previous decade. Additionally, "public forum" has been substituted for "public utility" in similar written and verbal capacities no less than 500 times via Defendant's executives.

12. Defendant falsely claims that Twitter's repeated insistence that it is a public forum is a conclusory allegation by the Plaintiff.

13. The most recent instance in which CEO Jack Dorsey stated that Twitter is a "public forum" is in his recorded, internationally televised testimony in front of the US House of Representatives Committee on Energy and Commerce, which can be read at (https://d3i6fh83elv35t.cloudfront.net/static/2018/09/Dorsey.pdf), in which Dorsey used the term "global town square". Verbally, he said "we believe many people use Twitter as a digital public square", and "What separates a physical and digital public space is greater accessibility and velocity. We are extremely proud of helping to increase the accessibility and velocity of a simple, free, and open exchange." This message, given unsolicited and in front of the US House of Representatives, must be taken at face value as prima facie evidence of the Plaintiff's claim.

14. The terms "public utility, public square, public forum, town square, global town square" and any other similar language used by Defendant should be read as synonymous, and as a claim to public jurisdiction.

15. Courts have held that the online spaces of elected officials used in their official capacity are under public jurisdiction. *In Knight First Amendment Institute v. Trump (1:17-cv-05205)* the Court found the following: "We hold that portions of the @realDonaldTrump account -- the "interactive space" where Twitter users may directly engage with the content of the President's tweets -- are properly analyzed under the "public forum" doctrines set forth by the Supreme Court, that such space is a designated public forum, and that the blocking of the plaintiffs based on their political speech constitutes viewpoint discrimination that violates the First Amendment. In so holding, we reject the defendants' contentions that the First Amendment does not apply in this case and that the President's personal First Amendment interests supersede those of plaintiffs."

"The viewpoint-based exclusion of the individual plaintiffs from that designated public forum is proscribed by the First Amendment and cannot be justified by the President's personal First Amendment interests. In sum, defendants' motion for summary judgment is granted in part and denied in part, and plaintiffs' cross-motion for summary judgment is granted in part and denied in part."

16. When reading the prior statements by Defendant's executives in the context of the rulings of the Court in *KFAI v. Trump, supra* affirming jurisdiction, at least in part regarding public spaces created by elected officials in their official capacity, this Court must, at the bare minimum, conclude based on an active *stare decisis* precedent, that every US resident has the First Amendment right to access the public forum spaces of the tweets of President Donald J. Trump and other elected US officials in their official capacity. The phrase "no state actors" is irrelevant in this context, because if a private company were to place fences preventing access to City Hall, they'd be told to remove those fences by the authorities for the exact same reasons. Indeed, the Defendant has done just that, illegally limiting the access of individuals to public First Amendment protected forums. *ARS § 13-2906* states: "A person commits obstructing... public thoroughfare if the person, alone or with other persons... intentionally interferes with... entrance into a public forum that results in preventing other persons from gaining access to a governmental meeting, a governmental hearing or a political campaign event." Defendant has engaged in obstructing the public thoroughfare. As the District Court of NY provided relief in *KFAI v. Trump, supra*, likewise, this Court must provide relief under similar grounds. Neither the State, nor citizens or corporations, can legally interfere with access to First Amendment protected public forums. The CDA does not provide the ability to interfere with public forum access. The space in question is under public jurisdiction.

17. Twitter's Terms of Service "contract" is unconscionable, which historically is interpreted by Courts as a fundamental Breach of Contract. (Plaintiff's argument in regards to this end is contained in 27).

18. Users have a reasonable expectation in lieu of a conscionable contract that they will be treated fairly and if something changes in their ability to use the service or their accounts, that they will receive an arbitration hearing and opportunity for bargaining, which the Defendant has not provided to even one of the tens of millions of active US users on their platform.

19. In regards to the Fourth Cause of Action, Conversion, Twitter's own current policy documents for advertisers entail that the value of each follower is at least $2.50-$5.00 USD. This also entails that followers are a currency/commodity with tangible value. The assertion by Defendant that property is not identified is false and contradicts with its own policy documents.

20. Plaintiff's allegations of monetary injury in the loss of over 500,000 followers, which Defendant has not contested and in fact has admitted in response 28, currently valued at between at least $2.50-$5.00 USD by Defendant's own policy documents, have a direct value of at least $1,250,000-$2,500,000 USD, and are more than sufficient to constitute a significant emotional injury, as the average reasonable person would face severe emotional trauma from the loss of over one million dollars of property. Truly, you would be hard-pressed to find even a single person who would not at least be somewhat emotionally injured.

21. Defendant claims that Plaintiff does not assert an existing contract. This is false as Plaintiff asserts his own FEC filings, which are indeed a contract with the FEC and the Federal Government, with the expectancy being the value of campaign donations, votes, salary, and the position of US Senator, and all related benefits. The annual salary of a US Senator is $174,000.

22. In the absence of a conscionable contract, all contractual actions by the Defendant are promissory. The Defendant has intended to split multiple conjoined Causes of Action via a disjointed argument that deceptively omits bits and pieces, when the contract-related Causes cannot be argued against as bits and pieces, but rather the contract-related Causes of Action filed by Plaintiff must be treated as a single coherent argument. Namely, the First, Third, Fourth, Sixth, Seventh, and Eighth Cause are shared arguments.

23. Plaintiff has proven the First and Third Causes via precedent and evidence, in showing that *KFAI v. Trump, supra*, and *In re:Zappos* (see 27) affirm those Causes. Based on that showing and context, the Court can interpret the Fourth, Sixth, Seventh and Eighth causes to also be proven. All that remains is for Discovery to proceed, so that the Second and Fifth Causes, which pose a far more significant challenge to Defendant's business model, can be examined in the light of significant evidence.

24. Defendant falsely contests that Plaintiff's claim of estoppel is contradictory or in conflict. An unconscionable, unilateral, illusory contract is a lack of mutual agreement via arbitration/bargaining. Plaintiff has proven the contract to be illusory and unilateral. What remains is promissory estoppel, as Courts have held that an illusory, unconscionable contract is the same as no contract at all (*In re:Zappos, supra,* via Document 27).

25. Defendant states on Page 8, Line 13 of Document 28 that the emotional and monetary injury of the loss of 500,000 followers and 2,000 high profile followers "has already occurred". This is a direct admission by the Defendant that should be taken at face value, the injury did indeed occur, and the Defendant is not contesting that they are liable for the injury.

26. The Plaintiff's injury is not an isolated "vacuum" case. As Defendant has admitted that the injury did occur, the injury has likewise occurred to

tens of millions of other users similarly situated to Plaintiff. The irreparable harm need not individually be solely inflicted upon Plaintiff, but rather has been duplicated to others in countless similar events, as Twitter has suspended tens of millions of other users, it continues to be an ongoing practice by the Defendant, which willfully ignores its own obligations, operates via an unconscionable contract, against its own publicly stated intents and views, and generally acts against the public interest and the law in a reckless and unaccountable fashion as a rule rather than an exception.

27. In spite of all of these admissions by the Defendant, Defendant frivolously states that the balance of equities lies in Twitter's favor. Defendant's admission that injury occurred is a direct contradiction of their subsequent assertion that Plaintiff has failed to show cognizable injury.

28. Defendant has failed to show that it has First Amendment editorial rights within the spaces which their executives have asserted as "public utility" and which the District Court of NY in *KFAI v. Trump, supra* declared to be public spaces. Defendant's generalized "blanket" declaration without evidence of Twitter's alleged editorial rights falls short of the specific Court rulings in question here. Defendant has failed to answer any of the questions posed by Plaintiff, instead substituting his own mock questions in a textbook "straw man" argument which is as unconscionable to the law as it is to the average reasonable person. It is frivolous on legal, social, and philosophical levels.

29. The constitutional rights in question via Plaintiff's complaint are not solely those of the Defendant, a singular entity and corporation, but rather the constitutional First Amendment Rights of tens of millions of people who wish to access the Public Forum spaces declared by the Court in *KFAI v. Trump, supra*. Plaintiff asserts that the Defendant must move its "fences" to allow public access to a space which is under public jurisdiction. Plaintiff's claim is supported by State and Federal law.

30. Truly, it is Defendant who has escalated this process which could have been amicably been resolved by a reasonable personal resolution/compromise by the Defendant, or by multi-party arbitration. However, Defendant's response indicates that they act unilaterally in bad faith, without regards for good faith arbitration and negotiation. It can thus be concluded that not only is their contract "Terms of Service" unconscionable via *In:re Zappos, supra*, it can likewise be concluded that it was written that way deliberately in order to mislead. That is why the unconscionable contract changed no less than 22 times without a single arbitration hearing or opportunity for bilateral bargaining. (See Document *27*). Plaintiff made more than 60 unique non-judicial attempts to arrange arbitration/discussion with Defendant between 2017 and Present. If Defendant was interested in maintaining their alleged rights under the law, they should not have violated the law.

31. Plaintiff does not allege that Defendant is liable for content hosted on their platform, or in the public forums declared in *KFAI v. Trump, supra*. Defendant likewise does not allege that Plaintiff shared any content that would be grounds for tort liability. In fact, there is no allegation of abuse, liability or harm by Plaintiff whatsoever by Defendant. CDA section 230 does not apply to public jurisdiction spaces, and thereby Defendant's claim of exemption from private jurisdiction liability does not apply to public jurisdiction liability that never existed for Defendant in the first place, as the public jurisdiction liability falls solely upon the shoulders of the US Federal Government. Likewise, it is impossible for Plaintiff to have created liability for Twitter in that public jurisdiction space which *KFAI v. Trump, supra* ruled is the liability of the public official and/or government that controls the space. Plaintiff's activities within President Trump's Twitter space are the liability of President Trump and the Federal Government, not Twitter.

32. Furthermore, Plaintiff did not and cannot violate the unconscionable contract, nor has Defendant even alleged that Plaintiff attempted to do so. Plaintiff has acted entirely in good faith in spite of bad faith actions by the Defendant, resulting in the rise of the Complaint, the single and final form of action.

33. Defendant asserts in *28*: "Twitter's response to the Complaint is not due until December 10, 2018, And Twitter's MIDP responses would be due, at the earliest, 30 days later." However, this is in direct defiance of the Order of the Court in Document *20*, wherein Hon. Judge David G. Campbell ordered the following: "Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a Case Management Conference is set for December 13, 2018 at 4:30 p.m. in Courtroom 603, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. The parties are directed to meet and confer at least 10 days before the Case Management Conference as required by Federal Rule of Civil Procedure 26(f). At this meeting the parties shall develop a joint Case Management Report[.]" Defendant must obey and respect the Order(s) of the Court. Defendant likewise notes for the record that they were served with Hon. Judge David G. Campbell's MIDP order and have the ability to comply with it. To be aware of a Court Order while being able to comply, and then to defy it is Contempt. Plaintiff does not allege that the Defendant's actions are contemptuous at this point, as there is still time for the Defendant to comply accordingly with the Order of the Court. However, if the Defendant does not comply with the Order of the Court, that non-compliance should be considered Contempt. Defendant's stated intent to act in ignorance of a standing Court Order cannot be contemptuous by itself, but it is nevertheless reckless and should be noted as such.

34. Regarding the Second and Fifth Causes of Action, the grounds are laid out clearly but the claims themselves will require discovery for evidence. However, where there is smoke, this Court must consider that there is a strong possibility of fire. On or around September 22, 2018, the White House drafted an Executive Order authorizing the antitrust investigation of online platforms which would include Twitter, Facebook and other social media companies. This pending Federal investigation would mirror the multiple active investigations by State Attorney Generals into Defendant's practices and policies as they relate to antitrust.

35. Defendant alleges without evidence that Plaintiff's proposed injunction restoring tens of millions of accounts would irreparably harm them. However, Defendant has not shown that those accounts caused any harm whatsoever, in a legal sense, and in fact, knowing that those accounts both have monetary value and added value to Defendant, it is exactly the opposite. Restoring those accounts would add value to Defendant's service, as many of them were held by paying customers who regularly purchased advertising from the Defendant. Thus, Plaintiff's Complaint actually helps the Defendant and is constructive, rather than destructive. In fact, hundreds of thousands of users create a new Twitter account every day, including previously suspended users, and Defendant has failed to show that the creation of these new accounts, which are similar and/or equal to the previously suspended accounts, causes harm. In fact, in its quarterly reports, Defendant regularly cites account growth as a positive. Account Growth, Daily Active Users and Monthly Active Users cannot simultaneously be a net positive and irreparable harm. Defendant's claim is not only wrong, but contradictory of the metrics and message of its own financial filings (https://investor.twitterinc.com/static-files/b9402133-be92-4ea4-ac2b-db20be19d1cd).

36. Defendant fails to show that there is any monetary cost associated with the restoration of the accounts as stated in the original preliminary injunction motion. Defendant also does not object to Plaintiff's claim that the restoration of the accounts would take 5 minutes or less. Under that standard and for practical purposes, Defendant admits that Plaintiff's assertions are correct. An action with no cost which takes 5 minutes to complete can hardly be considered "irreparable harm" by this Court or by any reasonable person, especially in light of the real financial, constitutional and social harms incurred upon individuals who are and have been subjected to the loss of, and subsequent deprivation of their First Amendment rights to participate in public forums. Nor has Defendant made even a semblance of a showing of past, present or future harm.

37. Defendant's interpretation of Fed R. Civ. P 4(d)(3) is incorrect because Defendant admitted on October 5, 2018 via email that they had already received the Complaint, and requested preemptively that Plaintiff waive the Summons. Defendant stated the following via email: "We represent Twitter, Inc. ("Twitter"). We are aware of No. 18-CV-01714; that a summons was issued as to Twitter; and that the Court set a deadline of November 27, 2018, for you to properly serve the summons, amended complaint, notice regarding the Mandatory Initial Discovery Pilot, and motion for preliminary injunction. I have attached a Notice of a Lawsuit and Request to Waive Service of Summons. If you complete that form properly, attach a copy of the amended complaint, attach a copy of the Waiver of the Service of Summons form with the appropriate fields completed, and send it back to me, we will complete the Waiver on behalf of Twitter and you will not need to serve the summons or complaint. Twitter preserves and does not waive any available rights or objections. We are not otherwise authorized to accept service on behalf of Twitter at this time."

38. Thereby, by the Defendant's admission, the Amended Complaint was served on October 5, 2018, the Waiver of Service was redundant, and Defendant did not state at the time that they would need additional time to reply to the Amended Complaint. Rather, Defendant acted as if they wanted to resolve the issue at hand quickly, and yet since that date, Defendant has become less and less responsive with regards to the Case Management Conference. Additionally, the MIDP and Complaint response are separate processes. Defendant cannot exempt themselves from the MIDP process because the Waiver process does not apply to the MIDP, which is a separate process conducted by the Order of the Court. Defendant's decision to delay their reply to the Amended Complaint shall have no weight or impact upon the other proceedings, as via Fed R. Civ. P 4(d)(4) "When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver."

39. Defendant asserts an illusory, imaginary "right" to seek a stay of the MIDP deadlines where no such right exists. In truth, Defendant's requested Waiver of Summons was approved and signed by the Plaintiff under the belief that the Defendant is/was negotiating in Good Faith, and likewise can be revoked by the Plaintiff, who can withdraw the Waiver of Summons and then serve the Complaint if he feels the Defendant is taking advantage of his Good Faith, thus terminating any additional allotted time granted by Plaintiff to Defendant. Defendant's ongoing illegal, unilateral, unconscionable and overweening bargaining with regards to their Terms of Service should not be replicated as a legal process by Defendant's counsel. Defendant should use this knowledge, expedite their response to the Amended Complaint in Good Faith, obey the Orders of the Court, and immediately schedule the Rule 16 Case Management Conference. When the Defendant promises to delay, it does not attack the Plaintiff's arguments, it attacks the Court.

40. Finally, the Defendant accepts (by failure to oppose) Plaintiff's claims that:

A. Permanently barring any non-prisoner from a public forum is illegal.

B. Plaintiff is/was a candidate for public office, and his accounts are likewise public spaces and forums, which he is entitled to use.

C. *Taylor v. Twitter (CGC-18-564460)*, with similar grounds, was approved to proceed under the grounds of the CDA and the First Amendment.

D. Over 500 million users have been harmed by Twitter's decisions.

E. Twitter is one of the 3 top social networks in the US by market percentage.

F. Twitter has engaged in anticompetitive actions with regards to antitrust.

G. There are an overwhelming number of witnesses in this case.

H. Plaintiff is the legitimate owner of his accounts.

I. The conditions affecting Social Media Networks would bankrupt a non-monopoly.

J. There was no foreseeability of the risk of the loss of Plaintiff's account.

K. Plaintiff took no actions that warrant the blocking, closure, shadowbanning or other censorious actions towards his account.

L. That Defendant took the actions described by Plaintiff in the Eighth Cause of Action for the reasons entailed in the Amended Complaint.

## III. WITHDRAWAL OF PRELIMINARY INJUNCTION

41. Plaintiff moves to withdraw the motion for preliminary injunction without prejudice. Plaintiff asserts that the request for preliminary injunction is entirely valid and meets the "Winter test", however, the motion for preliminary injunction is superseded by the more complete and accurate Proposed Order contained in 27. Plaintiff uses this opportunity to provide a supplemental memorandum to the Court for future reference and in response to Defendant's inaccurate, false, speculative, contradictory, conclusory, and otherwise wrong arguments, which will in turn be attached (along with other forthcoming supporting memoranda) to future filings.

DATED: November 13, 2018    _____

Craig R. Brittain

8625 E. Sharon Dr.

Scottsdale, AZ, 85260

(602) 502-5612

craig@brittainforsenate.com

craigrbrittain@gmail.com