Craig R. Brittain

8625 E. Sharon Dr.

Scottsdale, AZ, 85260

(602) 502-5612

craig@brittainforsenate.com

craigrbrittain@gmail.com

# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

CRAIG R. BRITTAIN, an individual
and US Senate candidate in Arizona in
the 2018 Federal Elections;

BRITTAIN FOR US SENATE,
a Principal Campaign Committee,
(And on behalf of all similarly affected
users of Twitter).

      Plaintiff(s),

         vs.

TWITTER, INC., a California

corporation.

      Defendant.

**No. CV-18-01714-PHX-DGC**

**GENERAL MEMORANDUM**

**RESPONSE TO DOCUMENT 30**

**RESPONSE TO DOCUMENT 31**

## I. RESPONSES TO 30 AND 31

Plaintiff files this General Memorandum and Response(s) to Documents *30* and *31* filed by Defendant.

## II. FACTUAL BASIS/GENERAL MEMORANDUM

1. Plaintiff reincorporates the whole of the contents of documents *13*, *27*, and *32*.

2. Defendant states that Plaintiff seeks to acquire the "ultimate relief", this is false. Rather, as disputes are seen by the law as only having two sides (ARS § 16-42, based on an earlier general rule), Plaintiff asserts that an impasse has been reached, as the prima facie complaint stated by Plaintiff in *13* is that the whole of Defendant's contract is invalid, with Defendant arguing that the whole of the contract is valid.

3. Defendant has selectively produced parts of their contract but has not produced all parts of all contracts between 2008 and Present.

4. Plaintiff's arguments in *13*, *27*, *32* as to the unconscionability of Defendant's contracts are clear, produced in whole, and accurate.

5. Defendant's contracts do include retroactive provisions and the termination of Plaintiff's accounts without arbitration constitutes retroactive modification. Furthermore, even if they were not, the cases cited in *27* apply generally, retroactive or not, for the reasons stated in those cases. Courts hold, 99.9% of the time, that a contract that can be changed at any time without arbitration is an illusory contract. Defendant does not challenge any of the reference/admiralty cases cited within the scope of *In:re Zappos*, and instead cites a false and limited interpretation of the opinion of the Court whereas Plaintiff has produced the entire opinion.

6. Plaintiff's complaint is "not merely a state or regional problem, but ...one of nationwide scope." "Interference with governmental action has occurred and the constitutionality of Title II is before the Court in a companion case, the Court reaches the merits of this case by considering the complaint as an application for declaratory judgment." (*Katzenbach v. McClung, 379 U.S. 294*)

7. The actions of Defendant can be seen, generally, to "affect commerce", and the powers of the judiciary to enforce Federal law can be seen as "broad and sweeping". (*McClung, supra*)

8. Knowing that the scope has been set in this manner, specific attempts by Defendant to qualify their actions must be measured against the broad scope of jurisdiction granted by *stare decisis*.

9. Defendant has never offered out-of-court arbitration to the Plaintiff, or anyone else. The basis for contractual agreement hinges upon the possibility of non-judicial arbitration and good faith bargaining.

10. The act of arbitration itself is required for good faith bargaining, whether or not the act is specifically mentioned in the contract or not. Courts have held for over a century that the absence of arbitration, whether a provision is included or not, represents inequality of bargaining. "Such a contract, whether founded on fraud, accident, mistake, folly, or ignorance, is void at common law. It is not necessary to invoke the aid of a court of equity to reform it. Courts of law will always refuse to enforce such a bargain as against the public policy of honesty, fair dealing, and good morals." (*Hume v. United States, 132 U.S. 406 (1889)*)

11. Plaintiff has not waived his preeminent right to arbitration. The absence of an arbitration provision is treated by Courts as if an unconscionable arbitration provision existed. "There is no evidence of an arbitration agreement existing before March 1, 1996, and there is no language in the handbook to suggest its provisions are retroactive." (*Trumbull v. Century Marketing Corp., 12 F. Supp. 2d 683 (N.D. Ohio 1998)*). Additionally, *Trumbull, supra*, cited in *In:re Zappos, id* in *13*, establishes that the arbitration in question need not be retroactive or retroactively modified. Bargaining via arbitration is a right that exists prior to the contract, whether or not that right is mentioned in the terms of the contract itself, or not.

12. Plaintiff has never agreed to the contract or Terms of Service, nor has any user of Twitter's services, as no one can agree to an unconscionable contract. (*Hume, supra*)

13. Over 10,000 public officials in total, consisting of elected officials from every US State and territory, and as many as 100,000 candidates for public office have used Twitter's service to create public forums, the jurisdiction of which is specified in *KFAI v. Trump, id* in *13*, between 2008-2018. This represents the presence of tens of thousands of public jurisdictions, of which, it is the right of all users of Twitter's service to access, where access was shown to be in *KFAI v. Trump*, the ability to tweet in the spaces, around them (meaning, upon the user's own profile spaces in such a way that elected officials may see them), to follow users, to like and retweet tweets, to be verified (the "blue check"), the ability to not be blocked, the ability to not be limited from the use of the spaces in any way, other than the ability of public officials to mute, individually, tweets that they do not wish to see/read, without removing or blocking the users themselves from those public spaces. This is further explained in *27* and *32*.

14. Defendant has silently modified its contracts in a way which is browsewrap, not clickwrap, due to the absence of arbitration and bargaining upon contractual modification of any sort. The cases cited by Defendant are those in which arbitration exists, along with conscionable arbitration agreements. Those cases are dissimilar to Defendant's situation. In *Ekin v. Amazon, id* in *30*, the Court granted Amazon's motion for arbitration. Similarly, from *US v. Drew, id* in *30* : "the MSTOS has a provision wherein "any dispute" between MySpace and a visitor/member/user arising out of the terms of service is subject to arbitration upon the demand of either party." *Davis* vs. *USA Nutra Labs, id* in *30*, includes a full paragraph on arbitration and a motion to compel arbitration.

15. Defendant invokes the findings of cases in which a Motion for Arbitration has been brought forth, yet within this venue/jurisdiction, Defendant has not filed a Motion for Arbitration.

16. No cases exist, without a standing arbitration process, in which a Court has recognized that the Defendant can change the terms of their contract at any time without noticing the Plaintiff.

17. If Defendant correctly enacted an Arbitration Process, they would, historically and in accordance with what other companies have done previously, wind up restoring the accounts of the majority of their users on those grounds alone, as well as paying substantial expenses/damages to those users.

18. Defendant's admission that they do not have a standing arbitration process furthers Plaintiff's claim of Breach of Contract.

19. Defendant has initiated a demand for this Court to uphold their unconscionable contract as valid. Plaintiff did not wage the initial demand, and thereby in requesting that the contract be upheld as-is, the burden of proof of the conscionability of that contract lies upon the Defendant.

20. The absence of an arbitration process is regularly held as unilateral and overweening. Defendant falsely asserts that claims involving arbitration are unilateral, but those claims are bilateral, as arbitration is a bilateral process. The reason the Courts ruled in the manner which they did in those cases is the presence of bilaterality and bargaining in various forms which does not exist anywhere in Defendant's contracts. Nor has any form of bilaterality or bargaining, to include but not limited to arbitration agreements, ever existed in Defendant's contracts, and no Court has ever upheld a contract which does not include at least a seminal nod to the bargaining process.

21. In asserting the false validity of their contracts, Defendant has made numerous admissions to the contrary. Documents *30* and *31* are no different.

1  Defendant has filed, directly, to this Court, admissions which range from the

2  subtle (that they have no arbitration/bargaining process and that they view

3  Plaintiff's complaint as comparable to that of a conspiracy theorist), to the

4  flagrant (that Plaintiff's loss of followers was and is a cognizable injury created

5  by Defendant, that Defendant regularly changes their contracts without

6  consent or notice).

7      22. Given this pattern, Plaintiff is well within his rights and has a solid

8  base of facts and evidence, much of the evidence provided by the Defendant

9  themselves, with which to responsively ask the Court to rule on an issue with

10  only two sides. Twitter's contract is either wholly valid or wholly invalid. It

11  cannot be enforced in part or withheld in part.

12      23. As the contract is wholly invalid, this Court is within their

13  jurisdiction and ability to rule as such and grant the Proposed Order in *27*.

14      24. As the public jurisdictions are established in *KFAI v. Trump* and not

15  contested by Defendant, this Court is also within their jurisdiction and ability

16  to grant the Proposed Order by that alone. (See Document *32*)

17      25. Defendant asserts *Hurley v. Glib, id* at *30*. However, in *Hurley*,

18  jurisdiction was specially granted via permit, "Every year since that time, the

19  Council has applied for and received a permit for the parade... No other

20  applicant has ever applied for that permit." Defendant has no standing permit

21  granting them jurisdiction, nor have they applied for a permit.

22      26. Defendant asserts *Fair v. Roommates, id* at *30*, but *Fair* applies

23  generally to purely private platforms. Plaintiff does not argue that the

24  Defendant has the right to edit on the private side of the fence. Rather, Plaintiff

25  asserts that *KFAI v. Trump* rightly established that neither Defendant nor any

26  state actor can edit the public side of the fence. Courts have long held that

27  public jurisdiction has the right of way over private jurisdiction. *Kelo v. New*

28  *London, 545 U.S. 469 (2005)* shows that Eminent Domain can be used freely

1   with regards to private property and the transfer of ownership between private

2   individuals. The presence of public spaces on Defendant's platform, likewise,

3   makes all of the private spaces transferable by the standards of *Kelo, supra*.

4   "public use [is] public purpose". (*Fallbrook Irrigation Dist. v. Bradley, 164 U.*

5   *S. 112, 158–164*). "Without exception, the Court has defined that concept

6   broadly, reflecting its longstanding policy of deference to legislative

7   judgments as to what public needs justify the use of the takings power."

8   (*Berman, 348 U. S. 26; Midkiff, 467 U. S. 229; Ruckelshaus v. Monsanto Co.,*

9   *467 U. S. 986. Pp. 6–13*).

10   27. Subsequently, the State, having proven to have footholds on

11   Defendant's platform, has widespread jurisdiction to utilize the Takings Clause

12   to the extent of the entirety of Defendant's website, if they so wish. "[O]nly

13   where the State provides no remedy, or only inadequate remedies, to injured

14   patent owners for its infringement of their patent could a deprivation of

15   property without due process result." (*Florida Prepaid Postsecondary*

16   *Education Expense Board v. College Savings Bank, 527 U.S. 627 (1999),* See

17   also *Parratt v. Taylor, 451 U.S. 527, 539 531 (1981); Hudson v. Palmer, 468*

18   *U.S. 517, 532 533 (1984)*)

19   28. In the light of *KFAI v. Trump, supra*, it can likewise be asserted that

20   the Takings Clause has already been utilized by state actors, in a digital form,

21   and that they have effectively acquired state ownership of their accounts and

22   public forums on Defendant's service.

23   29. The Defendant has not asserted that the presence of these First

24   Amendment public forums poses a threat cognizable under the CDA, and the

25   Defendant has the burden of proving the claimed 'irreparable harm', regarded

26   in *Kelo, supra* as 'property deprivation': "In challenging a property deprivation,

27   the claimant must either avail himself of the remedies guaranteed by state law

28   or prove that the available remedies are inadequate."

The "remedies guaranteed by state law" include bilateral arbitration, which the Defendant has waived and made no claim to or motion for, and Defendant has made no attempt to prove that the available remedies are inadequate.

30. Defendant cites *Mezey v. Twitter, id* at *30*, in which the Amended Complaint is written on lined notebook paper. Additionally, Mezey self-describes himself as a "special needs adult". There was no chance that even if Mezey's complaint was valid, in which Plaintiff gives him the Good Faith benefit of the doubt, that he could prevail upon the merits. Plaintiff's complaint is not Mezey's complaint, but Plaintiff indicates that those affected, such as Mezey, who cannot win on the merits despite their best efforts, are the exact purpose for this complaint, in which the Plaintiff is fully capable of prevailing upon the merits of his arguments and provided evidence. Accordingly, the Court in *Mezey* did not find that the Defendant prevailed on the merits, rather, they found that Mezey failed to state a claim. Defendant has not alleged that Plaintiff in this case fails to state a claim, and in fact has admitted to several claims stated by Plaintiff. The Court in *Mezey* should have found Mezey to be legally incompetent by his own admission and dismissed his complaint without prejudice rather than ruling upon it. *Indiana v. Edwards, 554 U.S. 164 (2008)* affirmed the standard for would-be criminal pro se defendants, but the case should logically apply to pro se civil litigants as well, "We consequently conclude that the Constitution permits judges to take realistic account of the particular [potential self-represented litigant's] mental capacities".

31. Defendant cites *Bassett v. Elec. Arts, Inc., Serpa v. California Sur. Investigations, Inc.,* and *Keena v. Groupon,* all *ids* in *31*. As with previous citations, these cases invoke a standing arbitration agreement, which Defendant does not have, and Defendant has not filed a motion to compel arbitration, as was filed in these cases.

32. As mentioned above, Defendant's interpretation of *In:re Zappos* is wrong, on its face. The reason for the ruling in *Zappos* is that the arbitration agreement was found to be illusory. The absence of an arbitration agreement is the same as an illusory agreement, by contract standards.

33. Defendant cites *Schoenberger v. Oelze*, *id* at *31*, however, the ruling itself states "The scope of our decision is narrow and limited to the enforceability of arbitration clauses against inter vivos trust beneficiaries". Thus, it does not apply here.

34. Defendant admits that Twitter's services are "free" in *31*, which further damages the idea that irreparable harm could be caused by restoring full access to all users. This poses a direct contradiction to the assertions posed by Defendant in citing *Maxwell v. Fidelity* and *Dunn v. FastMed*, *ids* in *31*. The services cannot simultaneously be free and equitable with their restoration being equal to irreparable harm. If the services are indeed free and equitable, then there is no reason for the Court not to accept the Proposed Order. If they are not, then the Defendant is misrepresenting the value of those services, in which case the Court should also accept the Proposed Order.

35. 28 U.S. Code § 1391 (d) states "such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State". Via the hiring of local Arizona attorneys, Defendant has admitted to the jurisdiction of Arizona as California, and that there is essentially no difference between the two in their mind. Defendant's move to change venue, generally, is unwarranted, as is the rest of their motion.

36. *Kingman Hospital v. MPC*, *id* in *31* is LLC specific. Defendant is not an LLC.

37. *Desert Autosports v. Auto Fin*, *id* in *31*, is governed by a Note, in lieu of an arbitration agreement.

1  Defendant does not possess any sort of Note indicating that Plaintiff consented
2  via arbitration or legally similar activity to the venue in question. Notes require
3  signatures, in the case of *Desert Autosports, supra*, the Note was signed. That
4  Note and subsequent signature represents a form of bargaining via arbitration,
5  which is wholly absent in this case.

6  **III. RESPONSE TO 30/ARGUMENT**

7      38. "If you are a federal, state, or local government entity in the United
8  States using the Services in your official capacity and legally unable to accept
9  the controlling law, jurisdiction or venue clauses above, then those clauses do
10 not apply to you." By being a candidate for Federal Office who used Twitter in
11 his official capacity, Plaintiff is exempt from the forum-selection clauses.

12     39. The first version of Twitter's Terms of Service contract includes no
13 mention of California or of any venue whatsoever. Therefore, it can be
14 concluded from (https://twitter.com/en/tos/previous/version_1) that the forum-
15 selection clause was added afterwards, which directly contradicts Defendant's
16 claim that "Twitter has never selected a forum other than the courts of San
17 Francisco county", as the forum-selection clause was retroactively enforced
18 upon all existing members in and after 2009, without arbitration or notice.
19 Twitter previously agreed, by lack of provision in the original contract, not to
20 select any particular venue, and the terms of the original contract were non-
21 exclusive with regards to forum/venue.

22     40. Twitter's contract is a browsewrap, not a clickwrap.

23     41. Plaintiff's complaint asserts primarily a jurisdiction which is public
24 space and therefore not covered by Twitter's contract. That jurisdiction must
25 then be where the events occurred, namely where the Plaintiff was physically
26 while using the services to conduct the official business of public candidacy.

27     42. The burden of proving the legitimacy of the forum-selection clause
28 weighs upon the Defendant, who has not proven their claims.

43. Plaintiff need not assert a specific forum, because in the absence of a valid, exclusive forum-selection cause, governed by bargaining and arbitration, any Federal Court can rule equally.

44. Defendant's claim to venue change is disputed by the absence of a claim for arbitration and/or any evidence/proof that Plaintiff actually agreed to the forum-selection clause.

45. Defendant's Terms of Service cannot be partially valid and partially invalid. They are either wholly invalid, as Plaintiff alleges, or wholly valid, as Defendant alleges, and the Court must decide plainly if Twitter's regularly modified Terms of Service are a valid contract before ruling on any other parts of the claim.

## IV. RESPONSE TO 31/ARGUMENT

46. Plaintiff reincorporates above arguments and adds the following with regards to Document *31*.

47. The evidence exists here to show that Defendant is indeed liable for creating an illusory and false contract without the possibility of arbitration. The Court is wholly within its ability and jurisdiction to find Defendant's contract illusory and grant the Proposed Order.

48. Plaintiff's request is not for the "ultimate relief".

49. Defendant has not proven irreparable harm and has made admissions to the contrary, that its service is free and dependent upon new users.

50. Plaintiff, however, has suffered irreparable harm, "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *MDY INDUSTRIES v. Blizzard Entertainment, 616 F. Supp. 2d 958 (D. Ariz. 2009)*, quoting *MySpace, Inc. v. Wallace, 498 F. Supp. 2D 1293*.

51. The Defendant has not endured a single loss via the restoration of any previously suspended account (they have restored many accounts).

1    As previously demonstrated by Plaintiff in *27* and *32,* restoring the accounts of

2    suspended users would actually add profit and goodwill to Defendant's service.

3         52. Likewise, Plaintiff's experience of property deprivation in the form

4    of his account is quite real with regards to the balance of equities, where with

5    regards to the Defendant, all of the non-monetary relief requested will actually

6    improve the Defendant's situation.

7         53. The reason for the absence of arbitration agreements and/or claims

8    to arbitration in Defendant's Terms is a deliberate attempt to avoid bargaining.

9    Defendant has no intent to bargain or negotiate. Defendant's intent is to

10   demand, to suppress and to control. There is no evidence that Defendant has

11   ever conducted even a single arbitration hearing with any user of their service,

12   for any reason, yet Defendant continues to cite cases involving arbitration. The

13   absence of any hearings in over 10 years is proof that the agreement is illusory.

14        54. Twitter does not have a public permit for their "parade" with regards

15   to *Hurley, supra.*

16        55. The right of public access necessitates the need for immediate relief

17   for all affected US users of Defendant's service, which can and should be

18   granted via the Proposed Order. Defendant does not contest that they have

19   prevented users from accessing the public forums on their service, a clear cut

20   violation of the First Amendment. Only Twitter has been recognized in this

21   specific manner via *KFAI v. Trump, supra,* and thus this ruling is extremely

22   narrow with regards to a specific type of communication on a specific public

23   platform, and would not alter the landscape of the CDA for publishers who run

24   wholly private social networks without state actors utilizing them for official

25   government business.

26        56. Therefore, the Motion to Compel and the Proposed Order should be

27   upheld immediately, and the Court should rule that Defendant's contracts are

28   wholly invalid.

1    57. Additionally, in *Verdugo v. Alliantgroup, 237 Cal.App.4th 789*

2    *(2015)*, the Court held that "Although a party opposing enforcement of a

3    forum selection clause ordinarily bears the burden to show enforcement would

4    be unreasonable or unfair, the burden is reversed when the underlying claims

5    are based on statutory rights the Legislature has declared to be unwaivable."

6    58. *Verdugo, supra*, derives its authority from the ruling in *Wimsatt v.*

7    *Beverly Hills Weight etc.   Internat., Inc. (1995) 32 Cal.App.4th 1511*, in

8    which the Court ruled that "[T]he party seeking to enforce the forum selection

9    clause bears the burden to show litigating the claims in the contractually-

10   designated forum "will not diminish in any way the substantive rights afforded

11   under [that State's] law[s]."

12   59. Defendant has not addressed *Winsatt, supra*, (the "Winsatt

13   Standard") with specific regards to the individual rights allotted to the Plaintiff

14   in the State of Arizona vs. those of the State of California. In *Verdugo, supra*,

15   the Court ruled: "the forum selection clause is unenforceable as against public

16   policy".

17   60. Additionally, *Verdugo, supra*, states that choice-of-law provisions are

18   "unwaivable", that forum selection clauses and choice-of-law provisions are

19   "inextricably bound", and that "public policy favor[s] arbitration as a quick

20   and cost effective means of dispute resolution." (Quoting from *Rodriguez de*

21   *Quijas v. Shearson/American Express, Inc. (1989) 490 U.S. 477*)

22   61. Defendant's contract states: "The laws of the State of California,

23   excluding its choice of law provisions, will govern these Terms and any

24   dispute that arises between you and Twitter." However, choice of law

25   provisions and the subsequent associated and related rights are unwaivable, in

26   both Arizona and California. In actuality, Defendant's contract does not contain

27   a choice of law selection provision that can be recognized as conscionable

28   under the laws of either Arizona or California.

62. "With respect to contract matters, in the absence of an explicit choice of law by the parties, the contractual rights and duties are determined by the local law of the state having the most significant relationship to the parties and the transaction... the following factors are evaluated to determine which state's law is applicable: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties." *Cardon v. Cotton Lane Holdings, Inc., 173 Ariz. 203, 207 (1992)*. Plaintiff contests that an unconscionable contract cannot be signed. The negotiation (rather, absence of) was conducted in Arizona. The performance, or creation of the subject matter, was in Arizona. The subject matter is that of Arizona, as content created by the Plaintiff had direct reference to Arizona and his personal life, also in Arizona. The Plaintiff lives and works entirely in Arizona, while the Defendant, which contractually created nothing, resides and does business in both California and Arizona. The harm to Plaintiff occurred in Arizona. Plaintiff thereby expected, and expects, that the choice of law will be that of the State of Arizona, inextricable and immovable from this District Court of Arizona.

63. Additionally, "A [C]ourt, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." (*Second Restatement §6*). "A state in which a party is domiciled has an interest in rules it promulgates to protect its residents against the unfair use of superior bargaining power." (*Dresser Industries, Inc. v. Sandvick, 732 F.2d 783 (10th Cir. 1984)*)

64. Defendant's motion to change venue is thereby unwarranted and it violates the laws of both Arizona and California, which Defendant is requesting the transfer to. It should be summarily denied for that and the other reasons stated.

1

2

3

4

5

6

7   DATED: November 26, 2018

8                           Craig R. Brittain

9                           8625 E. Sharon Dr.

10                          Scottsdale, AZ, 85260

11                          (602) 502-5612

12                          craig@brittainforsenate.com

13                          craigrbrittain@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28