**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig R. Brittain, an individual and U.S. Senate candidate in Arizona; and Brittain for U.S. Senate, a campaign committee, | No. CV-18-01714-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Twitter Inc., a California corporation, | |
| Defendant. | |

Defendant Twitter, Inc. has filed a motion to transfer venue.  Doc. 22.  The motion is fully briefed.  Docs. 27, 30, 33.  Plaintiffs' request for a hearing is denied because oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b).  For reasons stated below, the Court will grant the motion.

**I.    Background.**

Plaintiff Craig Brittain was a candidate for an Arizona U.S. Senate seat in the 2018 election.    He   created   several   Twitter   accounts   for   the   campaign,   including @CraigRBrittain, @AuditTheMedia, @SenatorBrittain, and @Brittain4Senate.   Twitter suspended the accounts, and Brittain filed suit.  Doc. 1.  His amended complaint asserts eight causes of action:    (1) First Amendment violations, (2) federal election law violations, (3) breach of contract, (4) conversion, (5) antitrust violations, (6) negligent infliction of emotional distress, (7) tortious interference, and (8) promissory estoppel.

1    Doc. 13.  Brittain alleges, among other things, that his Twitter accounts are protected
2    public forums and that the unlawful suspensions resulted in the loss of 500,000 followers.
3    *Id.* ¶¶ 3-4.  He seeks $1 billion in damages, a declaration that Twitter interfered in the
4    2018 federal election, and an injunction preventing Twitter from suspending or otherwise
5    limiting access to accounts.  *Id.* at 9.

6         When Brittain registered for the account online, he agreed to Twitter's Terms of
7    Service ("Terms") by affirmatively assenting to the "clickwrap" agreement.   The Terms
8    include forum selection clauses providing that any dispute related to the Terms or Twitter
9    services are to be brought solely in the federal or state courts located in San Francisco
10   County, California.  Twitter seeks to enforce the forum selection clauses and have this
11   case transferred to the United States District Court for the Northern District of California
12   pursuant to 28 U.S.C. § 1404(a).  Doc. 22.

13   **II.    Legal Standard.**

14        Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in
15   the interest of justice, a district court may transfer any civil action . . . to any district or
16   division to which all parties have consented."   Under this provision, the district court
17   "[o]rdinarily . . . would weigh the relevant factors and decide whether, on balance, a
18   transfer would serve 'the convenience of parties and witnesses' and otherwise promote
19   'the interest of justice.'"  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
20   571 U.S. 49, 62-63 (2013) (quoting § 1404(a)).  When parties have agreed to a valid
21   forum selection clause, however, "the calculus changes" because the clause "represents
22   the parties' agreement as to the most proper forum."  *Id.* at 63.  "For that reason, and
23   because the overarching consideration under § 1404(a) is whether a transfer would
24   promote 'the interest of justice,' 'a valid forum-selection clause should be given
25   controlling weight in all but the most exceptional cases.'"  *Id.* (quoting *Stewart Org., Inc.*
26   *v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

27        When the parties have entered a forum selection clause, "[t]he plaintiff's
28   subsequent choice of forum merits no weight."   *Yei A. Sun v. Advanced China*

*Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 63-64).   All factors relating to the private interests of the parties must be deemed "as weighing 'entirely in favor of the preselected forum.'"   *Id.* at 1087-88 (quoting *Atl. Marine*, 571 U.S. at 64).   And while factors relating to the public interest may be considered, "those factors will rarely defeat a transfer motion." *Id.* at 1088.[1]

In short, a forum selection clause is controlling unless the plaintiff makes a "strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, . . . or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)); *see Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) ("A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." (quoting *M/S Bremen*, 407 U.S. at 17)).

**III.   Discussion.**

When the @CraigRBrittain, @AuditTheMedia, and @Brittain4Senate Twitter accounts were created, the Terms governing the accounts provided that "[a]ll claims, legal proceedings or litigation arising in connection with the Services" are to be brought in San Francisco.  Doc. 23 ¶ 5.  Similarly, the Terms in effect when the @SenatorBrittain account was created stated that San Francisco is the sole venue for "[a]ll disputes related to these Terms or the Services[.]"  *Id.* ¶ 6.  Each forum selection clause provides that the account holder "consent[s] to personal jurisdiction" in the selected forum and "waives any objection as to inconvenient forum." *Id.* ¶¶ 5-6; *see id.* at 21, 32.

---

[1] The private interest factors include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining attendance of willing witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.*  Public interest factors include the administrative difficulties flowing from court congestion and the local interest in having localized controversies decided at home. *Id.*

1    Brittain does not dispute that he voluntarily agreed to the Terms when he created

2   each Twitter account, that the forum selection clauses are mandatory rather than

3   permissive, and that his claims fall within the scope of the clauses.[2]   Brittain makes

4   several arguments as to why the forum selection clauses should not be enforced.   Doc. 27.

5   None has merit.

6       **A.    Validity of the Contract.**

7       The Terms contain provisions allowing Twitter, in its sole discretion, to revise the

8   Terms from time to time.   *See* Doc. 23 at 21, 32.   Brittain argues that these unilateral

9   modification provisions render the entire Terms unconscionable and illusory.   *Id.* at 2-3,

10   6-7.   Brittain cites *In re Zappos.com, Inc., Customer Data Security Breach Litigation*,

11   893 F. Supp. 2d 1058 (D. Nev. 2012), in support of this argument.   *Id.*

12       But the terms of use at issue in *Zappos.com* involved a *retroactive* modification

13   provision that allowed "Zappos to hold its customers and users to the promise to arbitrate

14   while reserving its own escape hatch."   893 F. Supp. 2d at 1066.   Because the terms of

15   use bound "consumers to arbitration while leaving Zappos free to litigate or arbitrate

16   wherever it [saw] fit, there exist[ed] no mutuality of obligation," and the arbitration

17   clause therefore was illusory.   *Id.*

18       In this case, by contrast, the unilateral modification provisions do not permit

19   Twitter to make any revision to the Terms retroactive.   Doc. 23 at 21 ("By continuing to

20   access or use the Services after . . . revisions become effective, you agree to be bound by

21   the revised Terms."); *id.* at 32 ("We may revise these Terms from time to time.   The

22   changes will not be retroactive."); *see Williams v. TCF Nat'l Bank*, No. 12 C 05115, 2013

23   WL 708123, at *10 (N.D. Ill. Feb. 26, 2013) (finding that retroactivity was the "fatal

24   flaw" that rendered the arbitration clause in *Zappos.com* illusory).   The forum selection

25   clauses also impose mutual obligations – they mandate that both Brittain and Twitter

26

27       [2] "[F]orum-selection clauses covering disputes 'relating to' a particular agreement
    apply to any disputes that reference the agreement or have some 'logical or causal
    connection' to the agreement."   *Yei*, 901 F.3d at 1086 (citation omitted).   Each cause of
28   action alleged in the amended complaint has some logical or causal connection to
    Brittain's agreements with Twitter.

- 4 -

1    pursue claims in the courts of San Francisco.  *See id*.  Twitter has not sought to modify

2    the Terms on this point.  Doc. 30 at 4.

3            Brittain asserts that the Terms are unconscionable because they contain no

4    arbitration clause and "have changed over time without arbitration."  Doc. 27 at 4.  But

5    Brittain cites no legal authority suggesting that Twitter is required to include an

6    arbitration clause in its Terms.   Nor has he otherwise shown that the Terms are

7    unconscionable or illusory.  *See Ekin v. Amazon Servs.*, *LLC*, 84 F. Supp. 3d 1172,

8    1175-76 & n.6 (W.D. Wash. 2014) (upholding clickwrap terms of use with unilateral

9    modification clause and distinguishing the *Zappos.com* clause because it "was forced on

10   those plaintiffs through a 'browsewrap' 'agreement' which required absolutely no

11   affirmative action on the part of the consumer"); *Davis v. USA Nutra Labs*, 303 F. Supp.

12   3d 1183, 1196 (D.N.M. 2018) (rejecting argument that Groupon's terms of use were

13   unconscionable because they were "offered by Groupon to its members through a

14   clickwrap process on a take-it-or-leave-it basis, without an opportunity for bargaining").

15          **B.      Brittain's Pro Se and In Forma Pauperis Status.**

16          Brittain asserts that his status makes it "gravely difficult" for him to participate in

17   the litigation.  Doc. 27 at 2, 5.  He notes that he "is traveling primarily by bicycle and/or

18   public transportation to file, upwards of 40 miles per trip[.]"  *Id.* at 2.  But the Northern

19   District of California permits filing by mail, eliminating the need for Brittain to bicycle or

20   use public transportation to file court documents.[3]   The fact that Brittain is a self-

21   represented, indigent litigant is no basis for not enforcing the forum selection clauses.  As

22   noted, the private interests of the parties must be weighed in favor of the preselected

23   forum.  *See Yei*, 901 F.3d at 1087.  Brittain has not shown that litigating in California

24   "will be so gravely difficult and inconvenient that he will for all practical purposes be

25   deprived of his day in court."  *M/S Bremen*, 407 U.S. at 18.

26          _____

27          [3] *See* U.S. District Court, Northern District of California, Filing Procedures (San
     Francisco), *available at* https://cand.uscourts.gov/filingprocsf; Pro Se Handbook at 13,
28   *available at* https://cand.uscourts.gov/prosehandbook (last visited Dec. 14, 2018).

1

## C.    Federal Questions Raised by the First Amendment Claim.

Brittain asserts that whether Twitter constitutes a protected public forum is a textbook federal question, and federal questions must be answered in the venue where most events occurred.  Doc. 27 at 3.  Brittain notes that he filed the action in this District pursuant to 28 U.S.C. § 1391(b)(2).  *Id.*  That general venue statute provides that "[a] civil action *may* be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"  § 1391(b)(2) (emphasis added). Nothing in the statute suggests that federal questions *must* be answered in a particular venue, and Brittain cites no legal authority for the proposition that § 1391(b)(2) trumps a valid and mandatory forum selection clause.  *See Stone v. Cty. of Lassen*, No. 2:12-CV-01946-MCE, 2013 WL 269085, at *4 (E.D. Cal. Jan. 23, 2013) (enforcing forum selection clause with respect to a First Amendment claim and noting that "a federal court need not exercise subject matter jurisdiction over federal question claims when there is a valid forum selection clause").

## D.    Arizona's Public Policy.

Brittain further asserts that enforcement of the forum selection clauses would "contravene a strong public policy of the venue in which the suit was brought," and "the public policy of . . . the District of Arizona is superior to that of the requested forum." Doc. 27 at 5.  He cites the purported "public interest of over one billion total users," including "tens of millions who have been censored, deverified, or suspended by Twitter," but draws no connection between the interests of those alleged users and Arizona public policy.  *See id.*  Twitter notes, correctly, that Arizona public policy *favors* enforcing forum selection clauses.  Doc. 30 at 8.  "Enforcement of a forum selection clause such as the one[s] at issue does not contravene any strong Arizona public policy as Arizona courts routinely hold that forum selection clauses are presumptively valid and that the party claiming the oppressiveness or unreasonableness needed to invalidate such a clause must meet a heavy burden of proof."  *Kingman Hosp. Inc. v. MPC Computers, LLC*, No. CV-07-8160-PCT-PGR, 2008 WL 2065241, at *2 (D. Ariz. May 14, 2008)

1    (citing *Bennett v. Appaloosa Horse Club*, 35 P.3d 426, 428-31 (Ariz. Ct. App. 2001));

2    *see Societe Jean Nicolas Et Fils v. Mousseux*, 597 P.2d 541, 543 (Ariz. 1979) (holding

3    that a valid forum selection clause "will be enforced so long as to do so is reasonable at

4    the time of litigation and does not deprive a litigant of his day in court").

5    **IV.    Conclusion.**

6            The forum selection clauses contained in Twitter's Terms of Service, which

7    Brittain accepted when he created and continued using his Twitter accounts, are

8    presumptively valid and enforceable.  Brittain has not met his heavy burden of showing

9    the extraordinary circumstances necessary to render the clauses unenforceable.  The

10   clauses must therefore be enforced, and the case transferred to the Northern District of

11   California.[4]

12           **IT IS ORDERED:**

13           1.      Defendant's motion to transfer venue (Doc. 22) is **granted**.

14           2.      Plaintiffs' motion to compel (Doc. 27) is **denied**.

15           3.      The clerk is directed to transfer this case to the United States District Court

16   for the Northern District of California.

17           Dated this 4th day of January, 2019.

18

19

20                                                     David G. Campbell
21                                                     Senior United States District Judge

22

23

24

25

26

27    _____

28    [4] In his reply brief, Brittain brings a motion to compel Twitter to immediately respond to MIDP requests.  Doc. 27 at 9-11.  The motion will be denied as premature. *See* Doc. 42.